IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

NO. **24-11902**

United States of America,

Appellant,

- versus -

Rodney Taylor,

Appellee.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

---

BRIEF FOR THE UNITED STATES
IN SUPPORT OF GOVERNMENT APPEAL

Markenzy Lapointe
United States Attorney
Attorney for Appellant
99 N.E. 4th Street
Miami, Florida 33132-2111
(305) 961-9277

Daniel Matzkin
Chief, Appellate Division

Yeney Hernandez
Assistant United States Attorney

Of Counsel

**United States v. Rodney Taylor, Case No. 24-11902**

**Certificate of Interested Persons**

In compliance with Fed. R. App. P. 26.1 and 11th Circuit Rules 26.1 and 28-1, the undersigned certifies that the list set forth below is a complete list of the persons and entities who have an interest in the outcome of this case.

Acosta, Alexander R.

Brannon, David Lee

Cone, Timothy

Crandall, Myles

Dopico, Hector A.

Fajardo Orshan, Ariana

Ferrer, Wifredo A.

Fritz, Allyson

Gonzalez, Juan Antonio

Greenberg, Benjamin G.

Hernandez, Yeney

Hurley, Daniel T. K.

Jimenez, Marcos Daniel

Johnson, Hon. Linnea R.

Matzkin, Daniel

**United States v. Rodney Taylor, Case No. 24-11902**

**Certificate of Interested Persons (Continued)**

Mendez, Armando

Montes, Andrea

Morris, Lothrop

Lapointe, Markenzy

LeClainche, Janice

Lourie, Andrew

Scola, Hon. Robert N.

Sloman, Jeffrey H.

Taney, Marisa Rayna

Taylor, Rodney

Vitunac, Hon. Ann E.

White, Hon. Patrick A.

s/ *Yeney Hernandez*
Yeney Hernandez
Assistant United States Attorney

## Statement Regarding Oral Argument

Because this appeal presents an issue of first impression concerning the interpretation of 18 U.S.C. § 3582(c)(1)(A), one that affects multiple appeals and pending sentence-reduction motions, the United States of America respectfully requests oral argument.

## Table of Contents

**Page:**

Certificate of Interested Persons ....................................................................c-1

Statement Regarding Oral Argument ...............................................................i

Table of Contents ............................................................................................ ii

Table of Citations ..............................................................................................v

Statement of Jurisdiction ............................................................................. xviii

Introduction .......................................................................................................1

Statement of the Issue .......................................................................................3

Statement of the Case:

1. Course of Proceedings and Disposition in the Court Below ............ 1

   A. Charges and Conviction ......................................................

   B. Direct Appeals.............................................................. 5

   C. Section 2255 Motions ..................................................... 6

   D. Compassionate Release Motions ...................................... 6

2. Legal Background ............................................................................... 8

   A. The Sentencing Reform Act of 1984 ................................... 8

   B. The First Step Act Of 2018 ............................................... 10

   C. The Sentencing Commission's 2023 Amendments To Sentencing Guidelines § 1B1.13 ......................................... 12

3. Statement of the Facts ....................................................................... 14

   A. Evidence Presented at Trial ............................................... 14

**Table of Contents**

**(continued)**

**Page:**


B. Post-Conviction Evidentiary Hearing .................................. 16

4. Standard of Review .................................................................. 19

Summary of the Argument ........................................................................ 19

Argument and Citations of Authority:

I. Revised Position Regarding Jurisdiction ....................................... 20

A. This Court Has Jurisdiction Under 28 U.S.C. § 1291. .......... 20

B. Section 1291 Is A Better Jurisdictional Vehicle for Compassionate-Release Appeals Than § 3742(b). ................ 25

C. This Court Should Confine *Dean* and *Denson* to their facts . 28

II. By Its Own Terms, Subsection (b)(6) Does Not Apply to Taylor. .. 31

III. The Sentencing Commission Exceeded Its Congressionally Delegated Authority In Promulgating Sentencing Guidelines § 1B1.13(b)(6). ......................................................................36

A. In Exercising Its Authority, The Commission Cannot Act Contrary to The Statute ........................................................36

B. Subsection (b)(6) Conflicts With § 3582(c)(1)(A)'s Plain Text, Context, and Purpose ...........................................................39

**Table of Contents**

**(continued)**

**Page:**


a. Intervening changes the law are neither "extraordinary" nor "compelling" reasons for a sentence reduction ...... 40

b. Section 3582(c)(1)(A)(i)'s context further confirms that the term "extraordinary and compelling" cannot encompass intervening changes in law ......................... 43

c. Recognizing intervening changes in law as extraordinary or compelling reasons for a sentence reduction under § 3582(c)(1)(A)(i) undermines a chief purpose of the Sentencing Reform Act, in which that provision was enacted ............................................................... 45

d. The Commission's interpretation of § 3582(c)(1)(A) is in serious tension with separation-of-powers principles .. 50

Conclusion ........................................................................................ 52

Certificate of Compliance ............................................................................ 53

Certificate of Service ........................................................................................ 53

## Table of Citations

**Cases:** **Page:**

*Batterton v. Francis*,

432 U.S. 416 (1977) ........................................................................... 36, 37

*Blakely v. Washington*,

542 U.S. 296 (2004) ..................................................................................5

*Bonner v. City of Prichard*,

661 F.2d 1206 (11th Cir. 1981)..............................................................28

*Brown v. United States*,

942 F.3d 1069 (11th Cir. 2019)..............................................................34

*Butcher v. Wendt*,

975 F.3d 236 (2d Cir. 2020)...................................................................28

*Carroll v. United States*,

354 U.S. 394 (1956) ................................................................................30

*DePierre v. United States*,

564 U.S. 70 (2011) ..................................................................................39

*Dillon v. United States*,

560 U.S. 817 (2010) ....................................................................... 8, 31, 39

*Dorsey v. United States*,

567 U.S. 260 (2012) ..................................................................................2

**Table of Citations**

**(Continued)**

**Cases:** **Page:**

*Fernandez v. United States*,

114 F.4th 1170 (11th Cir. 2024) ........................................................ 19, 34

*Fiore v. White*,

531 U.S. 225 (2001) ....................................................................................33

*Fleming v. Fleming*,

264 U.S. 29 (1924) ......................................................................................33

*Fort Bend County v. Davis*,

587 U.S. 541 (2019) ....................................................................................26

*Gonzalez v. Crosby*,

545 U.S. 524 (2005) ....................................................................................41

*Gore v. United States*,

357 U.S. 386 (1958) ....................................................................................50

*Hall v. Hall*,

584 U.S. 59 (2018) ......................................................................................21

*Jones v. Hendrix*,

599 U.S. 465 (2023) ............................................................................ 33, 44

**Table of Citations**

**(Continued)**


**Cases:** **Page:**

*Lorillard v. Pons*,

434 U.S. 575 (1978) ........................................ 34

*Mayo Found. for Med. Educ. & Research v. United States*,

562 U.S. 44 (2011) ........................................ 36, 37, 39, 46

*Mistretta v. United States*,

488 U.S. 361 (1989) ........................................ 37, 45, 50

*Neal v. United States*,

516 U.S. 284 (1996) ........................................ 8, 39, 46

*Preiser v. Rodriguez*,

411 U.S. 475 (1973) ........................................ 45

*Rivers v. Roadway Express, Inc.*,

511 U.S. 298 (1994) ........................................ 19, 33, 34

*United States v. Rutherford*,

2024 WL 4645583 n.13 (3d Cir. Nov. 1, 2024) ........................................ 23, 37, 38, 42

*Said v. U.S. Att'y Gen.*,

28 F.4th 1328 (11th Cir. 2022) ........................................ 32

## Table of Citations

## (Continued)


**<u>Cases</u>:** **<u>Page</u>:**

*Steel Co. v. Citizens for a Better Env't*,

523 U.S. 83 (1998) ........................................................................................26

*Tapia v. United States*,

564 U.S. 319 (2011) ....................................................................................8, 46

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*,

484 U.S. 365 (1988) ........................................................................................43

*United States v. Amato*,

48 F.4th 61 (2d Cir. 2022)................................................................................35

*United States v. Andrews*,

12 F.4th 255 (3d Cir. 2021)............................................................ 12, 22, 38

*United States v. Booker*,

543 U.S. 220 (2005) ........................................................................................5

*United States v. Bowers*,

615 F.3d 715 (6th Cir. 2010)........................................................... 24, 25, 26

*United States v. Bridgewater*,

995 F.3d 591 (7th Cir. 2021)............................................................................23

**Table of Citations**

**(Continued)**

**Cases:** **Page:**


*United States v. Bryant*,

996 F.3d 1243 (11th Cir. 2021)........................................................ 11, 19, 22, 31

*United States v. Chavarria-Herrara*,

15 F.3d 1033 (11th Cir. 1994)........................................................ 27, 28, 29, 30

*United States v. Chen*,

48 F.4th 1092 (9th Cir. 2022) ...................................................................12

*United States v. Crandall*,

25 F.4th 582 (8th Cir. 2022) .......................................................... 12, 35, 45, 47

*United States v. Crawford*,

243 F. App'x 476 (11th Cir. 2007) ..............................................................23

*United States v. Dean*,

752 F.2d 535 (11th Cir. 1985)................................................................ 28, 29

*United States v. Denson,*

588 F.2d 1112 (5th Cir.) *aff'd in part and modified in part en banc*,

603 F.2d 1143 (5th Cir. 1979)............................................................ 28, 29, 30

*United States v. Diaz-Rosado*,

No. 21-10834, 2023 WL 2129555 (11th Cir. Feb. 21, 2023) ...............................28

**Table of Citations**

**(Continued)**

**Cases:** **Page:**

*United States v. Edwards*,
No. 22-13518, 2023 WL 6232487 (11th Cir. Sept. 26, 2023) .............................22

*United States v. Escajeda*,
58 F.4th 184 (5th Cir. 2023) ..........................................................................35

*United States v. Ferguson*,
55 F.4th 262 (4th Cir. 2022) ..................................................................... 28, 35

*United States v. Giron*,
15 F.4th 1343 (11th Cir. 2021) .......................................................................22

*United States v. Gonzalez*,
62 F.4th 954 (5th Cir. 2023) ..........................................................................28

*United States v. Hald*,
8 F.4th 932 (10th Cir. 2021) ..........................................................................22

*United States v. Henderson*,
858 F. App'x 466 (3d Cir. 2021) ....................................................................35

*United States v. Hunnicutt*,
807 F. App'x 551 (6th Cir. 2020) ...................................................................27

**Table of Citations**

**(Continued)**


**Cases:** **Page:**

*United States v. Jarvis*,
999 F.3d 442 (6th Cir. 2021) ........ 42

*United States v. Jean*,
108 F.4th 275 (5th Cir. 2024) ........ 12

*United States v. Jenkins*,
50 F.4th 1185 (D.C. Cir. 2022) ........ 12, 33, 35, 41, 42, 47, 50

*United States v. Jones*,
980 F.3d 1098 (6th Cir. 2020) ........ 11

*United States v. King*,
24 F.4th 1226 (9th Cir. 2022) ........ 22

*United States v. King*,
40 F.4th 594 (7th Cir. 2022) ........ 41

*United States v. LaBonte*,
520 U.S. 751 (1997) ........ 37, 39, 52

*United States v. Latson*,
No. 19-14934, 2022 WL 3356390 (11th Cir. Aug. 15, 2022) ........ 7, 8, 32

**Table of Citations**

**(Continued)**

**Cases:** **Page:**

*United States v. Long*,

997 F.3d 342 (D.C. Cir. 2021) ....................23

*United States v. Marshall*,

954 F.3d 823 (6th Cir. 2020).................... 26, 27, 28

*United States v. Martin*,

21 F.4th 944 (7th Cir. 2021) ....................35

*United States v. McAndrews*,

12 F.3d 273 (1st Cir. 1993).................... 24, 25

*United States v. McCall*,

20 F.4th 1108 (6th Cir. 2021) ....................22

*United States v. McCall*,

56 F.4th 1048 (6th Cir. 2022) .................... 11, 12, 22, 40, 41, 43, 44, 45, 49

*United States v. McCoy*,

981 F.3d 271 (4th Cir. 2020)....................12

*United States v. McGee*,

992 F.3d 1035 (10th Cir. 2021)....................12

**Table of Citations**

**(Continued)**


**<u>Cases</u>:** **<u>Page</u>:**

*United States v. McMaryion*,

No. 21-50450, 2023 WL 4118015 (5th Cir. June 22, 2023)................................12

*United States v. Mills*,

613 F.3d 1070 (11th Cir. 2010)..........................................................................23

*United States v. Rivera-Rodriguez*,

75 F.4th 1 (1st Cir. 2023)....................................................................................24

*United States v. Roper*,

72 F.4th 1097 (9th Cir. 2023) .............................................................................35

*United States v. Ruvalcaba*,

26 F.4th 14 (1st Cir. 2022)..................................................................................12

*United States v. Taylor*,

184 F. App'x 870 (11th Cir. 2006) .......................................................................6

*United States v. Taylor*,

596 U.S. 845 (2022)............................................................................................34

*United States v. Taylor*,

No. 04-13305, 133 F. App'x 740 (11th Cir. 2005)...............................................5

**Table of Citations**

**(Continued)**

**Cases:** **Page:**

*United States v. Thacker*,
4 F.4th 569 (7th Cir. 2021) .......... 12, 33, 45

*United States v. Trenkler*,
47 F.4th 42 (1st Cir. 2022) .......... 35

*United States v. Vangh*,
No. 20-1901, 2021 WL 2934764 (8th Cir. July 13, 2021) .......... 22

*United States v. Wesley*,
60 F.4th 1277 (10th Cir. 2023) .......... 35

*United States v. Wesley*,
78 F.4th 1221 (10th Cir. 2023) .......... 32

*United States v. West*,
70 F.4th 341 (6th Cir. 2023) .......... 35

*United States v. White*,
163 F. App'x 834 (11th Cir. 2006) .......... 23, 24

*Watts v. BellSouth Telecommunications, Inc.*,
316 F.3d 1203 (11th Cir. 2003) .......... 30

**Table of Citations**

**(Continued)**

**Cases:** **Page:**

*Whitman v. Am. Trucking Ass'ns*,

531 U.S. 457 (2001) .......... 50

*Wisconsin Cent. Ltd. v. United States*,

138 S. Ct. 2067 (2018) .......... 40

**Statutes & Other Authorities:** **Page:**


18 U.S.C. § 922 ........ 3

18 U.S.C. § 924 ........ 3, 4, 33, 34, 37, 38

18 U.S.C. § 3231 ........ xviii

18 U.S.C. § 3551 ........ 8

18 U.S.C. § 3553 ........ 5, 9

18 U.S.C. § 3582 ........ xviii, 1, 3, 8, 9, 10, 11, 19, 20, 21, 22, 23, 25, 27, 29, 30, 31 32, 35, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50 ,51

18 U.S.C. § 3742 ........ xviii, 20, 24, 25, 26, 27

18 U.S.C. § 4205 ........ 9

28 U.S.C. § 991 ........ 8

28 U.S.C. § 994 ........ 2, 9, 10, 14, 36, 37, 43, 44

28 U.S.C. § 1291 ........ xviii, 21, 22, 23, 24, 25, 27, 28, 29, 30, 31

28 U.S.C. § 2255 ........ 3, 32, 44

Fed. R. App. P. 4 ........ xviii

Fed. R. App. P. 26.1 ........ c 1 of 2

Fed. R. App. P. 32 ........ 53

**United States Sentencing Guidelines:** **Page:**

§ 1B1.10 ........................................ 1, 3, 7, 10 ,12, 13, 19, 20, 31, 32, 34, 36, 47, 51

§ 1B1.13 ........................................ 13, 31

§ 2A1.1 ........................................ 4

§ 2K2.1 ........................................ 4

§ 4B1.4 ........................................ 4

## Statement of Jurisdiction

This is an appeal from a final order of the United States District Court for the Southern District of Florida granting a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i) (DE116). The district court had jurisdiction to enter the order pursuant to 18 U.S.C. § 3231. The United States filed a timely notice of appeal on June 7, 2024 (DE118); *see* Fed. R. App. P. 4(b). Pursuant to 18 U.S.C. § 3742(b), the Solicitor General of the United States of America authorized this appeal prior to the filing of the Government's initial brief. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## Introduction

Rodney Taylor, a criminal jack-of-all-trades with a violent history, was sentenced to life after killing a man during an armed robbery. Two decades later, this Court held that one of Taylor's prior convictions was not a "serious drug felony," which meant that Taylor no longer qualified as an Armed Career Criminal. In lieu of a § 2255 motion, Taylor filed a motion for compassionate release, which the district court granted based on the Sentencing Commission's newly promulgated guidelines.

Under Sentencing Guidelines § 1B1.13(b)(6), a defendant may qualify for a sentencing reduction if he can show that a "change in the law" produced a gross disparity between his actual sentence and the sentence likely to be imposed at the time he requested relief. Long before the Commission added this provision to § 1B1.13, the Supreme Court explained that a court decision clarifying the meaning of a statute is not a change in the law. And this Court has reaffirmed this principle. Thus, the ACCA court decisions that are the basis for Taylor's claim do not qualify as a "change in the law" under § 1B1.13(b)(6). Accordingly, Taylor was ineligible for a reduction under the guidelines' own terms.

Beyond this, the Commission overextended its authority in promulgating subsection (b)(6). Title 18 U.S.C. § 3582(c)(1)(A)(i) represents a narrow exception to the general rule that a federal court "may not modify a term of imprisonment once it has been imposed," permitting a court to reduce a term of imprisonment where it finds that "extraordinary and compelling reasons" warrant a reduction. Congress

directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons." 28 U.S.C. § 994(t). This was not, however, a license to upend sentencing repose. And yet the Commission did just that when it transformed routine nonretroactive changes in the law into "extraordinary and compelling" reasons for relief. But as the Supreme Court has explained, "in federal sentencing the ordinary practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced." *Dorsey v. United States*, 567 U.S. 260, 280 (2012).

The district court granted Defendant-Appellee Rodney Taylor a sentence reduction after finding subsection (b)(6) valid and applying that provision. But while Congress delegated broad authority to the Sentencing Commission, that delegation was not unbounded. The governing statute unambiguously prohibits the Commission from deeming nonretroactive changes in law "extraordinary and compelling." This Court should reverse the district court's order.

## Statement of the Issues

I. Does Sentencing Guidelines § 1B1.13(b)(6)'s "change in law" provision include changes stemming from intervening case law or is that provision limited to changes in statutory law, where this Court and the Supreme Court previously explained that judicial construction of a statute merely elucidates "what the statute has always meant"?

II. If Sentencing Guidelines § 1B1.13(b)(6) does capture intervening-case-law errors, could such errors ever qualify as an "extraordinary and compelling reason[]" for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), given that 28 U.S.C. § 2255 and the Antiterrorism and Effective Death Penalty Act of 1996 establish stringent limits on prisoners' ability to assert intervening-case-law errors as grounds for relief in post-conviction proceedings?

## Statement of the Case

### 1. <u>Course of Proceedings and Disposition in the Court Below</u>

#### A. Charges and Conviction

After brutally murdering a man during a robbery-gone-wrong, Taylor was charged with unlawfully possessing a .25 caliber Raven Arms semi-automatic pistol (Count 1), and one or more rounds of .25 caliber ammunition (Count 2), both in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (DE3). The government filed a notice of intent to rely on Taylor's three prior convictions to increase his sentence,

pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1) (DE28). Taylor went to trial (*see* DE51, 52, 53), and the jury found him guilty as to both counts (DE33).

In preparing Taylor's Pre-Sentence Investigation Report ("PSI"), Probation crossed-referenced the weapons offenses with the murder guidelines. USSG § 2K2.1(c)(1)(B) (specifying that when a firearm is possessed in connection with another offense and death results, the court should apply "the most analogous offense guideline from Chapter Two, Part A, Subpart 1 (Homicide)"). The homicide guideline set the offense level for first-degree murder at 43. USSG § 2A1.1(a). As an armed career criminal, Taylor was subject to a minimum sentence of 15 years and a maximum sentence of life. 18 U.S.C. § 924(e). But because the career criminal guidelines yielded a lower base offense level than the homicide guidelines (34 versus 43), the latter controlled. USSG § 4B1.4(b). Taylor had a total of nine criminal history points, corresponding to criminal history category IV, but because he was an armed career criminal, the guidelines raised his criminal history to VI. USSG §4B1.4(c)(2). With a total offense level of 43 and a criminal history category of VI, Taylor's guideline imprisonment range was life (PSI ¶ 66).

Taylor objected to the homicide cross-reference, arguing that there was "no proof that [he] was involved in the shooting" (DE41), and the district court held an evidentiary hearing (DE54, 55). The district court found, by a preponderance of the

evidence, that Taylor had used the .25 caliber semi-automatic pistol charged in the indictment to fatally shoot victim Hermanth Rao (DE54:663-67). Two weeks after the evidentiary hearings, the district court sentenced Taylor to life imprisonment (DE55:716, 719).

Taylor filed an untimely motion to correct his sentence for "clear error" based on the Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004) (DE44, 56). After a hearing, the district court denied this motion for lack of jurisdiction (DE46, 56).

**B. Direct Appeals**

Taylor filed a timely notice of appeal from the judgment (DE47), and the Eleventh Circuit ruled that the district court erred under *United States v. Booker*, 543 U.S. 220 (2005), by enhancing Taylor's sentence "for the murder under a mandatory guidelines-sentencing regime." (DE61). *United States v. Taylor*, No. 04-13305, 133 F. App'x 740 (11th Cir. 2005) (table).

On remand, the government argued that, even post-*Booker*, the district court had discretion to sentence Taylor to between 15 years and life (DE69:20). The government advocated for a life sentence because Taylor "didn't merely possess the gun. He used it to kill someone" (*id*. at 20). After considering the 18 U.S.C. § 3553(a) factors, the district court sentenced Taylor to life imprisonment (DE69:33).

Taylor appealed again, challenging the district court's reliance on the murder guidelines. This Court affirmed. *United States v. Taylor*, 184 F. App'x 870 (11th Cir. 2006).

**C. Section 2255 Motions**

In 2007, Taylor moved to vacate his conviction under § 2255, raising many of the same arguments from his direct appeal (Civil Case No. 07-80844-Hurley). The district court denied the motion (Case No. 07-80844, DE19), and this Court affirmed (DE43). In 2016, Taylor filed a second § 2255 motion (Civil Case No. 16-81115-Hurley), which the district court dismissed because it (1) raised the same claims from the first motion; and (2) this Court had not authorized a second or successive motion. This Court affirmed (Appellate Case No. 16-16752-FF).

**D. Compassionate Release Motions**

In January 2021, Taylor moved for compassionate release (DE84). The district court denied the motion (DE88:2) ("This Court does not agree that Mr. Taylor's age at the time of his conviction, his time served, and his arguments as to what his guideline range may have been had he been sentenced today constitutes extraordinary and compelling circumstances justifying his compassionate release.").

In October 2023, Taylor again moved for compassionate release, claiming that an intervening change in the ACCA meant he no longer qualified for the sentencing enhancement (DE89:3). The government opposed the reduction, arguing that the

Sentencing Commission overstepped its authority by defining "extraordinary and compelling reasons" to include nonretroactive changes in the law (DE93:25). The federal public defender filed the instant amended motion relying on the "unusually long sentence" provision under § 1B1.13(b)(6) (DE98:7). The government responded (DE100). Taylor filed a reply (DE103). The district court held hearings on the motion on March 18 (DE109) and May 13, 2024 (DE115). The parties submitted post-hearing memoranda on the status of Taylor's prior drug conviction (DE110, 111), and the government conceded that the conviction no longer qualified as an ACCA predicate (DE111:1).

On May 13, 2024, the district court granted Taylor's amended motion, finding "extraordinary and compelling" reasons for a reduction under the new "unusually long sentence" provision (DE116). The court first found that Taylor was eligible for relief because an intervening change in case law meant that he no longer qualified for the enlarged statutory penalties (DE116:5 (citing *United States v. Latson*, No. 19-14934, 2022 WL 3356390, *3 (11th Cir. Aug. 15, 2022)). Because Taylor would be subject to a 15-year maximum if sentenced today, the court observed, his life sentence constituted a "significant disparity" in sentencing that warranted reduction (DE116:6). The Court rejected the government's argument that the Sentencing Commission exceeded its statutory authority in promulgating the "unusually long

sentence" provision (DE116:3-4). The Court reduced Taylor's sentence to 30 years' imprisonment (360 months), with five years' supervised release to follow (*id.*).

The government timely appealed (DE118).

## 2. <u>Legal Background</u>

### A. The Sentencing Reform Act of 1984

The Sentencing Reform Act of 1984, Pub. L. No. 98-473, Tit. II, Ch. II, 98 Stat. 1837, 1987 (18 U.S.C. § 3551 *et seq.*), "overhaul[ed] federal sentencing practices." *Tapia v. United States*, 564 U.S. 319, 325 (2011). To make prison terms more determinate, Congress established the Sentencing Commission as an independent agency in the Judicial Branch and "authorized it to promulgate Sentencing Guidelines and to issue policy statements." *Dillon v. United States*, 560 U.S. 817, 820 (2010); *see* 28 U.S.C. §§ 991, 994(a). "The Commission was born of congressional disenchantment with the vagaries of federal sentencing and of the parole system," and Congress directed the Commission to "eliminate unwarranted disparities in punishment of similar defendants who commit similar crimes." *Neal v. United States*, 516 U.S. 284, 290-91 (1996).

Congress also abolished the practice of federal parole, specifying that a "court may not modify a term of imprisonment once it has been imposed" except in certain enumerated circumstances. 18 U.S.C. § 3582(c); *see Tapia*, 564 U.S. at 325. One of those circumstances, set forth in 18 U.S.C. § 3582(c)(1)(A)(i) (and commonly

referred to as "compassionate release"), authorizes a court to "reduce [a] term of imprisonment . . . , after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds," as relevant here, that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." As originally enacted, § 3582(c)(1)(A) authorized such reductions only "upon motion of the Director of the Bureau of Prisons" (BOP).[1] Sentencing Reform Act § 212(a)(2), 98 Stat. 1998.

Congress directed the Sentencing Commission to promulgate "general policy statements regarding . . . the appropriate use of . . . the sentence modification provisions set forth in [Section] 3582(c)." 28 U.S.C. § 994(a)(2)(C). Congress instructed the Commission, in promulgating policy statements regarding § 3582(c)(1)(A), to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a

---

[1] Under the system of federal parole, the Bureau of Prisons had authority to move "[a]t any time" for the sentencing court to "reduce any minimum term [of imprisonment] to the time the defendant has served." 18 U.S.C. § 4205(g) (repealed). BOP regulations explained that the Bureau generally used that authority "only in particularly meritorious or unusual circumstances which could not reasonably have been foreseen by the court at the time of sentencing," including where "there is an extraordinary change in an inmate's personal or family situation or if an inmate becomes severely ill." 45 Fed. Reg. 23,364, 23,366 (Apr. 4, 1980). As the Senate Report accompanying the Sentencing Reform Act explains, § 3582(c)(1)(A) was intended to be "similar to the authority" afforded to the BOP under 18 U.S.C. § 4205(g). S. Rep. No. 98-225, at 121 n.298 (1983).

list of specific examples." 28 U.S.C. § 994(t). Congress specified that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.*

In 2006, the Commission promulgated Sentencing Guidelines § 1B1.13, p.s. As amended in 2016, the policy statement described four categories of reasons that should be considered extraordinary and compelling: "Medical Condition of the Defendant;" "Age of the Defendant;" "Family Circumstances;" and "Other Reasons" "determined by the Director of the Bureau of Prisons" to be "extraordinary and compelling" "other than, or in combination with," the reasons described in the other three categories. Sentencing Guidelines App. C Supp., Amend. 799 (Nov. 1, 2016).

**B. The First Step Act Of 2018**

In the First Step Act of 2018, Congress amended § 3582(c)(1)(A) to allow defendants, as well as the BOP itself, to file motions for a sentence reduction. *See* Pub. L. No. 115-391, Tit. VI, § 603(b), 132 Stat. 5194, 5239. As modified, § 3582(c)(1)(A) now states:

> the court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier*, may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling

> reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A) (emphasis added).

Shortly after the First Step Act's enactment, the Sentencing Commission lost a quorum of voting members, and remained without a quorum for more than three years. *See* 88 Fed. Reg. 28,254, 28,256 (May 3, 2023). The Commission thus did not immediately amend the applicable policy statement to account for the First Step Act's procedural change. In the intervening years, this Court held that the 2016-era policy statement applied to all compassionate release motions, whether filed by the defendant or by the BOP. *See United States v. Bryant*, 996 F.3d 1243 (11th Cir. 2021). The remaining circuits held that the existing policy statement's description of what should be considered "extraordinary and compelling" reasons for a sentence reduction was inapplicable to defendant-filed motions. *See, e.g.*, *United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020). In the absence of a binding policy statement, the courts of appeals were obligated to construe the plain meaning of the phrase "extraordinary and compelling reasons" as used in § 3582(c)(1)(A)(i). Most circuits to consider the question determined that a change in the law, whether considered alone or in combination with other factors, cannot constitute an "extraordinary and compelling" reason for a sentence reduction.[2] As one court

[2] *See United States v. McCall*, 56 F.4th 1048, 1050 (6th Cir. 2022) (en banc);

explained, "the plain text of the compassionate-release statute" compelled the conclusion that "[n]onretroactive legal developments do not factor into the extraordinary and compelling analysis. Full stop." *McCall*, 56 F.4th at 1065-66.

### C. The Sentencing Commission's 2023 Amendments To Sentencing Guidelines § 1B1.13

On April 5, 2023, the Sentencing Commission amended Section 1B1.13's policy statement. 88 Fed. Reg. at 28,254-28,281; *see also* Sentencing Commission Public Meeting Tr. 27-82 (Apr. 5, 2023) ("4/5/23 Tr.").[3] The amendments to Section 1B1.13 render the policy statement applicable to defendant-filed motions. As relevant here, the amendments also allow, with certain limitations, consideration of changes in law—including ones Congress has chosen not to make retroactive—when determining whether a defendant has presented an extraordinary and

*United States v. Andrews*, 12 F.4th 255, 261 (3d Cir. 2021); *United States v. Thacker*, 4 F.4th 569, 571 (7th Cir. 2021); *United States v. Crandall*, 25 F.4th 582, 585-86 (8th Cir. 2022); *United States v. Jenkins*, 50 F.4th 1185, 1198-1200 (D.C. Cir. 2022); *United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam) (unpublished). Five circuits, in contrast, took the view that a change in the law can form part of an individualized assessment of whether to grant a sentence reduction, but only in combination with other case-specific factors. *United States v. Ruvalcaba*, 26 F.4th 14, 28 (1st Cir. 2022); *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020); *United States v. Jean*, 108 F.4th 275, 281-282 (5th Cir. 2024); *United States v. Chen*, 48 F.4th 1092, 1097-98 (9th Cir. 2022); *United States v. McGee*, 992 F.3d 1035, 1047-48 (10th Cir. 2021).

[3] https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20230405/20230405_transcript.pdf.

compelling reason for a sentence reduction. That change is reflected in new subsections (b)(6) and (c), which provide:

> (6) UNUSUALLY LONG SENTENCE.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

> (c) LIMITATION ON CHANGES IN LAW.—Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

88 Fed. Reg. at 28,255; *see* USSG § 1B1.13(b)(6), (c).

The Commission divided 4-3 on whether to promulgate the amendments to Section 1B1.13. *See* 4/5/23 Tr. 81-82. The dissenting Commissioners explained that, in their view, the policy statement "goes further than the Commission's legal authority extends," and that the Commission had made "a seismic structural change to our criminal justice system without congressional authorization or directive." *Id.* at 60 (Commissioner Wong, delivering joint statement). In particular, the

Commission's decision to allow nonretroactive changes in law to establish a basis for a sentence reduction "supplants Congress's legislative role" and would authorize courts "to revisit duly imposed criminal sentences at the ten-year mark based on intervening legal developments that Congress did not wish to make retroactive." *Id.* at 60-61. "The separation of powers problem" arising from that result, the dissenting Commissioners explained, "should be apparent," as "[i]t is not the Commission's role to countermand Congress's legislative judgments." *Id.* at 61.

The Commission submitted its proposed Guidelines amendments to Congress on April 27, 2023. 88 Fed. Reg. at 28,254. Because Congress did not act to modify or disapprove of the amendments, they became effective on November 1, 2023. *See* Sentencing Guidelines App. C Supp., Amend. 814 (Nov. 1, 2023); *see also* 28 U.S.C. § 994(p).

### 3. <u>Statement of the Facts</u>

#### A. Evidence Presented at Trial

Taylor lived with his girlfriend, Crystal Dalrymple, at her apartment in West Palm Beach, Florida from October of 2002 until the end of February 2003 (DE51:196-97; DE52:257-59). During that time, Dalrymple had seen a "small silver gun" that Taylor kept in a bag on a shelf in the master bedroom closet (DE51:211-12, 217). On December 28, 2002, at Taylor's request and direction, Dalrymple

purchased a box of Winchester .25 caliber ammunition for him at a Sports Authority store (DE51:184-89, 212-16, 237, 241-44).

On February 21, 2003, Dalrymple told the police about Taylor's gun in the closet and the ammunition she had purchased on his behalf (DE51:209, 242-43; DE52:282). The police obtained a warrant and conducted a search of the apartment, where they found a loaded .25 caliber Raven Arms semi-automatic pistol in the master bedroom closet and a box of Winchester .25 caliber ammunition in Taylor's dresser drawer (DE51:219-21, 229-31; DE52:265-81, 296, 320-27).

A federal warrant for Taylor's arrest was issued on March 13, 2003 (DE52:283-84). Taylor evaded capture for several weeks but was ultimately found and arrested at a motel on the night of April 30, 2003 (DE51:170-80; DE52:284-85). Taylor gave a statement to the police in which he admitted his unlawful possession of the gun and ammunition; he also supplied a saliva sample that was used to perform a DNA analysis (DE52:287-98, 301).

Taylor's right index fingerprint was on the side of the firearm, near the trigger guard (DE52:315-47, 375-90). Additionally, DNA recovered from the surface of the firearm was consistent with Taylor's DNA sample (DE52:351-68).

Finally, the parties stipulated that Taylor had previously been convicted of a felony (DE52:391).

### B. Post-Conviction Evidentiary Hearing

In the pre-dawn hours of February 1, 2003, Hermanth Rao and two of his friends, Juan Mejia and Jesus Ron, were leaving Club OHM in West Palm Beach when three black males and two Hispanic males tried to rob them (DE54:500-03, 553). Two of the black males brandished their guns, causing Mejia to toss his wallet in the air and run away screaming that he had been robbed (DE54:503, 506). Ron and Rao stayed behind and struggled with one of the Hispanic males, later identified as Johnny Bravo (DE54:507-08). The other assailants fled during the fight (DE54:507). When Bravo realized his cohorts had left, he ran down an alley (DE54:508). Ron and Rao gave chase, which drew the armed robbers back to the scene (DE54:509). The two robbers began shooting down the alley (DE54:509, 555-56). Ron injured his leg trying to escape and pretended to be dead on the sidewalk (DE54:513). Mejia was shot in the back of the leg and collapsed in the alley (DE51:1-12; DE54:578). From where he lay on the ground, Mejia saw a black male stand over Rao and shoot him repeatedly (DE54:578). Medical forensics established that Rao died from four gunshot wounds to the head (DE54:535).

When police found Rao's body, his Nextel cell phone was missing, and the gold chain he usually wore around his neck had been yanked off (DE54:530-32). The police later found Rao's wallet, which had been emptied, but did contain

evidence had he had cashed a $900 payroll check the day before the robbery (DE54:530-31).

Police traced Rao's cellphone records back to Taylor. Rao's ex-wife provided the police with Rao's phone number (DE54:563). From the cellphone records, the police discovered that Rao's cellphone was used just 21 minutes after the murder to call the apartment that Taylor shared with his girlfriend, Crystal Dalrymple (DE54:563-67). A minute later, a call was placed from Dalrymple's apartment to Rao's cellphone (DE54:567). Taylor continued to use Rao's cellphone for weeks after the murder, calling Dalrymple approximately 50 times during this period (DE4:568).

Police interviewed Dalrymple a few weeks after the murder (DE54:570). She told interviewers that Taylor had a new cell phone, but that she had taken it away from Taylor because she suspected he was using it to call other women (DE54:571). She gave the cellphone to police, who confirmed that it was, in fact, Rao's cellphone (DE54:572). Dalrymple also told police that Taylor kept a .25 caliber gun in the closet of their bedroom (DE54:572-73). About a month before the murder, she purchased ammunition for Taylor at his request (DE54:572). She added that Taylor was frequently with two friends, one of whom had been at Club OHM the night of the murder (DE54:558, 574).

Taylor's cousin testified that Taylor carried a silver handgun with a black handle "about every day" (DE54:617). Taylor had confided in the cousin that he "got into a fight with these Spanish dudes," "shot one dude," and stole the man's gold jewelry and Nextel phone (DE54:600-01). The cousin added that Taylor was worried about police linking him to the calls made with the victim's cellphone (DE54:617-18).

Two bullets and several bullet fragments were recovered from Rao's body (DE54:635-36, 640-43). Analysis of these bullets and bullet fragments showed that they were .25 caliber bullets shot from a semiautomatic pistol (DE54:638-39). Additionally, the spent casings found near Rao's body bore Winchester markings (DE54:640-43). This was consistent with the make and caliber of gun and ammunition recovered from Taylor's apartment. During their investigation, police found a box of Winchester .25 caliber ammunition in Taylor's dresser drawer, along with a .25 caliber Raven Arms semi-automatic pistol in his bedroom closet (DE51:219-21, 229-31; DE52:265-81, 296, 320-27). The ballistics expert who examined the Raven Arms pistol concluded that it could have been the gun used to shoot Rao, but there were not enough characteristics on the rounds to make a full match (DE54:540-41).

### 4. Standard of Review

This Court reviews de novo both determinations about a defendant's eligibility for a § 3582(c) sentence reduction and questions of statutory interpretation. *Bryant*, 996 F.3d at 1262.

## Summary of the Argument

The district court erred in holding that an intervening judicial decision qualifies as a "change in the law" under Sentencing Guidelines § 1B1.13(b)(6), thereby triggering eligibility for a reduction. But even if judicial decisions—rather than changes in statute—constitute a change in the law, § 1B1.13(b)(6) is invalid because it conflicts with § 3582(c)(1)(A)(i)'s "extraordinary and compelling" language.

Judicial statutory interpretations are not a change in the law but "an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction."[4] Following this key principle, when this Court held in *United States v. Latson* that Florida marijuana convictions do not qualify as "serious drug offenses" under the Armed Career Criminal Act, it was not creating new law. Thus, when the district court held that *Latson* constituted a

[4] *Fernandez v. United States*, 114 F.4th 1170, 1180 (11th Cir. 2024) (citing *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312-23 (1994)).

change in the law leading to a gross disparity between Taylor's sentence and the sentence he would receive today, it exceeded the bounds of § 1B1.13(b)(6).

But even if intervening judicial decisions constitute a "change in the law" under subsection (b)(6), the Sentencing Commission exceeded its congressionally delegated authority in promulgating subsection (b)(6). Subsection (b)(6) is contrary to § 3582(c)(1)(A)(i)'s text, structure, and purpose, and is therefore invalid. And most courts to consider the issue have held that nonretroactive changes in the law do not constitute "extraordinary and compelling" reasons for a sentencing reduction. This Court should reverse the district court's decision.

## Argument

### I. Revised Position Regarding Jurisdiction.

Before addressing the merits of the case, the government wishes to revise its earlier response to the Court's jurisdictional question. Upon further review, the government withdraws its argument regarding 18 U.S.C. § 3742(b) and believes that 28 U.S.C. § 1291 alone confers jurisdiction over this appeal.

#### A. This Court Has Jurisdiction Under 28 U.S.C. § 1291.

Under § 1291, appellate courts have reviewing authority over "all final decisions of the United States district courts." 28 U.S.C. § 1291. Because the government is appealing from a final decision—that is, the district court's compassionate release reduction—this Court has jurisdiction under § 1291. This

Court has previously cited § 1291 as a source of appellate jurisdiction over defendant-initiated appeals under both § 3582(c)(1) and §3582(c)(1)'s sister provision, § 3582(c)(2).[5] Moreover, the only court to address the question concluded it had jurisdiction over government-led § 3582(c)(1) appeals under § 1291. Finally, the Sixth Circuit, in a case involving an analogous post-conviction order, held that § 1291 was the operative jurisdictional provision.

Title 28, United States Code, Section 1291 reads: "The courts of appeals … shall have jurisdiction of appeals from all final decisions of the district courts of the United States … except where a direct review may be had in the Supreme Court." One of the hallmarks of a "final decision" under this section is that it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Hall v. Hall*, 584 U.S. 59, 64 (2018). A district court's order granting compassionate release under § 3582(c)(1) fits this definition to a tee.

First, compassionate-release orders resolve the defendant's post-conviction request for a sentence reduction and leave nothing for the court to do but execute the amended judgment. In this case, after granting Taylor's motion, the district court entered a new judgment reflecting his reduced sentence of 360 months (DE117).

---

[5] Whereas subsection (c)(1) governs compassionate release reductions, subsection (c)(2) deals with reduction motions based on revisions to the sentencing guidelines. Jurisdictionally speaking, however, the two provisions are not distinguishable in that they both involve changes to a previously-imposed sentence.

This order is final in any ordinary sense of the word. If the government cannot appeal now, it will never be able to challenge the district court's decision—because there is no forthcoming judgment that will tee up these issues for appeal.

Just last year, in *United States v. Edwards*, this Court deployed a similar jurisdictional analysis in the context of a defendant-initiated compassionate-release appeal, explaining: "Generally, we have jurisdiction to review only 'final decisions of the district courts.' Because the district court's [3582(c)(1)(A)] order here 'ended the litigation on the merits and left nothing for the court to do but execute the judgment,' it was a final order." *United States v. Edwards*, No. 22-13518, 2023 WL 6232487, at *1 (11th Cir. Sept. 26, 2023). Nothing about this reasoning suggests that a government appeal would be subject to different jurisdictional rules.

Second, this Court regularly reviews defendant-led § 3582(c)(1) appeals pursuant to § 1291.[6] And it's certainly not alone in doing so. *See, e.g.*, *United States v. King*, 24 F.4th 1226, 1228 (9th Cir. 2022); *United States v. McCall*, 20 F.4th 1108, 1111 (6th Cir. 2021); *United States v. Andrews*, 12 F.4th 255, 259 (3d Cir. 2021); *United States v. Hald*, 8 F.4th 932, 937 (10th Cir. 2021); *United States v. Vangh*, No. 20-1901, 2021 WL 2934764, at *1 (8th Cir. July 13, 2021) (per

---

[6] In some cases, without expressly addressing jurisdiction, this Court has apparently relied on the parties' joint recognition that § 1291 was the appropriate jurisdictional vehicle. *See United States v. Giron*, 15 F.4th 1343 (11th Cir. 2021) (parties listing § 1291 as sole jurisdictional provision); *United States v. Bryant*, 996 F.3d 1243 (11th Cir. 2021) (same).

curiam); *United States v. Long*, 997 F.3d 342, 350-52 (D.C. Cir. 2021). *But see United States v. Bridgewater*, 995 F.3d 591, 594 (7th Cir. 2021) (asserting jurisdiction pursuant to both § 1291 and § 3742(a)(1)). Most recently, in *United States v. Rutherford*, the Third Circuit reviewed a defendant's § 3582(c)(1) appeal pursuant to its authority under § 1291 and concluded that the Commission overstepped its authority in defining "extraordinary and compelling reasons" to include nonretroactive changes in law. No-23-1904, 2024 WL 4645583, *1, 6 n.13 (3d Cir. Nov. 1, 2024). And again, nothing in these opinions or the text of § 1291—or § 3582(c)'s text for that matter—suggests that government and defendant-led appeals should be treated differently for jurisdictional purposes.

Third, this Court has reviewed closely related § 3582(c)(2) orders under § 1291. *See, e.g.*, *United States v. Mills*, 613 F.3d 1070, 1074 (11th Cir. 2010); *United States v. Crawford*, 243 F. App'x 476, 479 (11th Cir. 2007). A companion provision to § 3582(c)(1), § 3582(c)(2) empowers courts to reduce a prisoner's sentence when his Guidelines "sentencing range . . . has subsequently been lowered by the Sentencing Commission." This Court's reasoning in *United States v. White*, 163 F. App'x 834, 835 (11th Cir. 2006), warrants a closer look. In that case, the government argued that § 3582(c)(2) orders were unreviewable pursuant to § 3742(a). Previewing its analysis in *Edwards*, this Court reasoned: "We have

jurisdiction over White's appeal because it is a final order denying White's motion for reduction of sentence." 163 F. App'x at 835, n. 1 (citing 28 U.S.C. § 1291).

These decisions dovetail with the First Circuit's jurisdictional analysis in *United States v. Rivera-Rodriguez*, 75 F.4th 1 (1st Cir. 2023). In *Rivera-Rodriguez*, the defendant urged the court to dismiss the government's compassionate release appeal for lack of jurisdiction, arguing that it did not fall under any of the enumerated grounds for appeal in 18 U.S.C. § 3742(b). Section 3742(b) allows the government to appeal "an otherwise final sentence" in one of four statutorily enumerated circumstances. But the government was not relying on § 3742(b); rather, it asserted § 1291 as the basis for jurisdiction. *Id.* at 15. This was because the First Circuit had previously held that § 1291—not § 3742—conferred appellate jurisdiction for Rule 35 appeals. *Id*. at 15-16. In *United States v. McAndrews*, 12 F.3d 273, 277 (1st Cir. 1993), the First Circuit parted ways with every other court to decide the issue, including this Court, by holding that a sentence-reduction order is jurisdictionally different from a traditional sentencing order.[7] Because of this fundamental difference, the *McAndrews* Court explained, "appealability [under § 1291] accords with the general principle … that rulings disposing of motions which seek to alter preexisting judgments are appealable." *Id*. at 16 (citing *McAndrews*, 12 F. 3d at 277).

---

[7] *See United States v. Bowers*, 615 F.3d 715, 719 (6th Cir. 2010) (collecting cases and highlighting split).

The First Circuit in *Rivera-Rodriguez* found no reason to distinguish between Rule 35(b) and compassionate release reductions, and concluded that "compassionate release appealability, like appealability with respect to the disposition of virtually all other post-judgment motions, is governed by 28 U.S.C § 1291." *Id*. (citing *McAndrews*, 12 F.3d at 277).

### B. Section 1291 Is A Better Jurisdictional Vehicle for Compassionate-Release Appeals Than § 3742(b).

Section 3742 allows the government to appeal a sentence if it: (1) was imposed in violation of law; (2) was imposed because of an incorrect application of the guidelines; (3) fell below the applicable guidelines range; or (4) was plainly unreasonable. 18 U.S.C. § 3742(b). The Sixth Circuit previously held that this statute was more like a claims processing rule than a true jurisdictional statute. Accordingly, appeals of sentence-modification orders fell under § 1291's jurisdictional ambit, not § 3742's.

In *United States v. Bowers*, the defendant moved for a guidelines-based sentence reduction under § 3582(c)(2). 615 F.3d 715, 717-19 (6th Cir. 2010). When the district court denied Bower's motion, he appealed. *Id.* The Sixth Circuit recognized that jurisdiction might lie in either § 1291 or § 3742(a) (subsection (a), which applies to defendant-led appeals, mirrors subsection (b) in all material respects). Concerned that tethering jurisdiction to § 1291 would allow defendants

to "circumvent the conditions imposed by" § 3742(a), the *Bowers* Court ultimately concluded that the statute governing "final sentences" applied. *Id.* at 719.

Ten years later, the Sixth Circuit revisited the *Bowers* decision in *United States v. Marshall*, 954 F.3d 823 (6th Cir. 2020). Marshall appealed the district court's denial of his early termination of supervised release motion. *Id.* at 824. Judge Sutton, writing for a unanimous panel, cautioned that "the Supreme Court has become increasingly careful about the different uses of 'jurisdiction,'" which has taken on "many, too many, meanings." *Id.* at 826 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998)). To narrow that usage, the Supreme Court explained that a statute should be construed as limiting a federal court's subject matter jurisdiction "[o]nly if the Legislature clearly states that a prescription counts as jurisdictional." *Marshall*, 954 F.3d at 826-27 (citing *Fort Bend County v. Davis*, 587 U.S. 541, 550 (2019)). Applying the clear-statement test, Judge Sutton concluded that "Section 3742(a) imposes a mandatory limit on [the court's] power, not a subject-matter jurisdiction limit." *Id*. at 827. Several textual features supported this assessment. First, the provision spoke to "what parties, not courts, must do." *Id.* Second, if the appealing party failed to pass through one of the four "gateways" described in § 3742(a) or (b), the statute directed the reviewing court to "affirm the sentence." *Id*. (citing 18 U.S.C. § 3742(f)(3)). It did not, however, "tell

courts to dismiss the appeal or use other language conveying that § 3742(a)'s limitations have jurisdictional consequences." *Id*.

The Sixth Circuit acknowledged that other courts, in the Rule 35 context, have held that § 3742(a) limits courts' "jurisdiction." *Id*. (citing cases). But it was unclear how these courts were using the term "jurisdiction." This Court's decision in *United States v. Chavarria-Herrara*,[8] for one, pre-dated the Supreme Court's clear-statement test by twelve years, which "alleviates any anxiety that [it] treated [§3742] as establishing limits on [courts'] subject-matter jurisdiction and displaced § 1291 in the process." *Marshall*, 954 F.3d at 828-29. With these considerations in mind, the *Marshall* Court held that it had jurisdiction over the defendant's supervised-release termination motion under § 1291—and not §3742, which was more akin to a claims-processing rule. Shortly thereafter, the Sixth Circuit extended Marshall's reasoning to § 3582(c)(2) appeals. *United States v. Hunnicutt*, 807 F. App'x 551, 552 (6th Cir. 2020). Likewise, here, the district court's compassionate release order constitutes a "final order" that this Court reviews under § 1291.

At least two other circuits have cited the *Marshall* Court's jurisdictional analysis with approval, and one even proposed taking the issue *en banc* to resolve

---

[8] 15 F.3d 1033 (11th Cir. 1994) (reviewing government's Rule 35 appeal pursuant to § 3742(b) authority).

inconsistencies in its jurisdictional precedent. *United States v. Gonzalez*, 62 F.4th 954, 957 n.1 (5th Cir. 2023) (urging en banc reconsideration); *Butcher v. Wendt*, 975 F.3d 236, 250 (2d Cir. 2020) (acknowledging court's prior characterization of § 3742(c) as jurisdictional, but observing that "a better, more recent view is that § 3742(a) imposes a 'mandatory limit on our power, not a subject-matter jurisdiction limit on our power'") (Menashi, J., concurring) (quoting *Marshall*, 954 F.3d at 827).

Finally, as a practical and equitable matter, § 1291 is a more appropriate jurisdictional vehicle for compassionate release motions than § 3742. As one circuit recently explained, if § 3742 were the governing statute, courts may be deprived of considering arguments related to defendant's advanced age or deteriorating medical condition, which "historically have been the hallmark of compassionate release motions." *United States v. Ferguson*, 55 F.4th 262, 267 (4th Cir. 2022); *see also United States v. Diaz-Rosado*, No. 21-10834, 2023 WL 2129555, at *4 (11th Cir. Feb. 21, 2023) (reviewing denial of deteriorating-health-based compassionate release petition).

**C. This Court Should Confine *Dean* and *Denson* to their facts.**

In *United States v. Dean*,[9] this Court rejected § 1291 as the jurisdictional basis for Rule 35 appeals. Relying on *United States v. Denson*,[10] a former Fifth Circuit

---

[9] 752 F.2d 535 (11th Cir. 1985).

[10] 588 F.2d 1112 (5th Cir.), *aff'd in part and modified in part en banc*, 603 F.2d 1143 (5th Cir. 1979). This Court, in the en banc decision *Bonner v. City of*

case finding no jurisdiction under § 1291 over a government-led sentencing appeal, the *Dean* Court held that Rule 35 appeals lacked sufficient independence from the underlying criminal case to constitute a "final decision." But this Court should confine *Dean* to its specific Rule 35 context and hold that § 3582(c)(1) appeals—just like § 3582(c)(2) appeals—fall within the auspices of § 1291. § 3582(c)(1) orders, which reduce a defendant's sentence and result in a new, amended judgment, are final decisions of the district courts.

In *Dean*, the government sought review of a district court's Rule 35 sentencing modification order. 752 F.2d at 539. The defendant contended that this Court had no jurisdiction over the appeal because no statute expressly permitted the government's appeal. *Id.* The government cited § 1291 as its jurisdictional hook, arguing that the Rule 35 reduction was a "final decision." *Id.* Concluding that the issue was controlled by its earlier holding in *Denson*, this Court agreed that § 1291 did not confer jurisdiction over Rule 35 appeals.

In *Denson*, the district court sentenced three defendants to terms of probation—an illegal sentence. 588 F.2d at 1116. The government appealed, and as to jurisdiction argued that this Court had reviewing authority under § 1291. *Id*. at 1126. The *Denson* Court's analysis began and ended with *Carroll v. United States*,

---

*Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

a Supreme Court case holding that certain orders could be appealed under § 1291 if they "possess[ed] sufficient independence from the main course of the prosecution to warrant treatment as plenary orders." *Id*. (citing *Carroll*, 354 U.S. 394, 403 (1956)). It concluded that the "sentencing process is the inevitable culmination of a successful prosecution" and could not have "sufficient independence from the criminal case to permit a government appeal under § 1291." *Id*. at 1126.

*Dean*'s focus on *Denson*'s "sufficient independence" language blinded it to the equally valuable "inevitable culmination" language. It made sense, under the limited facts of *Denson*, to deny appeal from an originally imposed sentence. But it cannot be said that a Rule 35 motion—or any post-conviction order amending an original sentence—is "the inevitable culmination of a successful prosecution." And so, post-conviction orders modifying a sentence fall within this court's § 1291 jurisdiction.

Ultimately, this Court need not confront *Dean*'s reading of *Denson* and *Carroll*, because that holding is not binding on this Court. A precedent applies no further than the facts and procedural context that gave rise to the case. *See Watts v. BellSouth Telecommunications, Inc.*, 316 F.3d 1203, 1207 (11th Cir. 2003) ("[J]udicial decisions cannot make law beyond the facts of the cases in which those decisions are announced."). Thus, while *Dean* is binding in the Rule 35 context, this Court need not repeat its mistakes when analyzing § 3582(c)(1)(A) appeals.

The plain language of § 1291 and § 3742, this Court's review of § 3582(c)(1) and (c)(2) cases, and out-of-circuit cases discussing post-conviction jurisdiction support review of this case under § 1291.

## II. By Its Own Terms, Subsection (b)(6) Does Not Apply to Taylor.

As a threshold matter, because Taylor does not meet subsection (b)(6)'s criteria by its own terms, he cannot establish extraordinary and compelling reasons for a sentence reduction.

Section 3582(c)(1)(A) specifically instructs that any sentence reduction ordered by a court be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). An applicable policy statement is binding on the court, and the court therefore may not grant a sentence reduction outside of the circumstances the Commission has detailed in Section 1B1.13. *Bryant*, 996 F.3d at 1251-52; *see also Dillon v. United States*, 560 U.S. 817, 826-27 (2010) (interpreting identical language as used in § 3582(c)(2)). In subsection (c) of the policy statement, moreover, the Commission specifically instructed that "[e]xcept as provided in subsection (b)(6), a change in the law . . . *shall not be considered* for purposes of determining whether an extraordinary and compelling reason exists." USSG § 1B1.13(c) (emphasis added). Because Taylor does not meet subsection (b)(6)'s criteria, he could not invoke that subsection in support of his sentence reduction motion, even assuming the provision is valid.

In district court, Taylor pointed to two intervening judicial decisions, *Said v. U.S. Att'y Gen.*, 28 F.4th 1328, 1333 (11th Cir. 2022) and *United States v. Latson*, no. 19-14934, 2022 WL 3356390, at *3 (11th Cir. Aug. 15, 2022), which he contends establish that the sentencing court committed legal error by sentencing him as an armed career criminal. But in invoking those intervening judicial decisions, Taylor is not relying on a *change* in the law that was not (and could not have been) applicable at his sentencing, such as a subsequent decision by Congress to lower the applicable penalties for his offense. Instead, he seeks to challenge the validity of his judgment based on a judicial decision interpreting existing law in a manner that supports a claim of legal error that he did not previously recognize.

Nothing in subsection (b)(6) authorizes courts to find that such a claimed error in the judgment establishes an extraordinary and compelling reason for a sentence reduction under § 3582(c)(1)(A)(i). *See* USSG § 1B1.13(b)(6); *see also United States v. Wesley*, 78 F.4th 1221, 1222 (10th Cir. 2023) (Tymkovich, J., concurring in denial of rehearing en banc) (explaining that "the Sentencing Commission's forthcoming amended policy statement . . . contains not a word about errors in a conviction or sentence as a basis for compassionate release"). For one thing, Congress has specified that the remedy for such claims of error lies through a direct appeal or a motion under 28 U.S.C. § 2255; indeed, § 2255 is the "remedial vehicle" Congress "specifically designed for federal prisoners' collateral attacks on their

sentences." *Jones v. Hendrix*, 599 U.S. 465, 473 (2023); *see Thacker*, 4 F.4th at 574 (explaining that § 2255 provides the "principal path" that Congress has "established for federal prisoners to challenge their sentences" after they have become final); *see also Jenkins*, 50 F.4th at 1202-04. No reason exists to believe that Congress or the Commission intended to allow defendants to circumvent the limits on that well-established process—which "embody Congress' judgment regarding the central policy question of postconviction remedies[:] the appropriate balance between finality and error correction," *Jones*, 599 U.S. at 491—by affording alternative relief through the amended policy statement regarding compassionate release.

It would be especially inappropriate to interpret subsection (b)(6) to reach claimed errors in the judgment based on intervening judicial decisions because such decisions do not effect a "change" in the law at all. An intervening judicial interpretation of a statute—even one that disagrees with earlier interpretations—"[i]s not new law." *Fiore v. White*, 531 U.S. 225, 228 (2001) (per curiam). Instead, "[a] judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction"; such a construction does not "'change[ ]'" the law but merely explains what a statute "*always* meant." *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 313-14 & n.12 (1994); *see also Fleming v. Fleming*, 264 U.S. 29, 31-32 (1924) ("The effect of [a]

subsequent decision[ ] is not to make a new law, but only to hold that the law always meant what the court now says it means.").

This Court has embraced *Rivers* in the § 924(c) space. In *Fernandez v. United States*, it held that Hobbs Act conspiracy and attempt were not—and *never* had been—valid predicates under § 924(c)'s elements clause. 114 F.4th 1170, 1180-81 (11th Cir. 2024). Per this Court's decision in *Brown* and the Supreme Court's decision in *Taylor*, conspiracy and attempt to commit Hobbs Act robbery, respectively, are not "crimes of violence" under § 924(c)'s elements clause. 114 F.4th at 1180 (citing *Brown v. United States*, 942 F.3d 1069, 1075 (11th Cir. 2019) and *United States v. Taylor*, 596 U.S. 845, 852 (2022)). The *Fernandez* Court explained that *Brown* and *Taylor* did not create new law, but rather clarified "'what a statute means,' which is necessarily what the statute has always meant." *Id.* at 1181 (citing *Rivers*, 511 U.S. at 312). Because courts simply recognize what the law "has always meant," intervening legal determinations should not be considered a "change" in the law that would necessarily alter "the sentence likely to be imposed" today. USSG § 1B1.13(b)(6).[11]

[11] Congress "is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Lorillard v. Pons*, 434 U.S. 575, 580 (1978). There is no reason to expect the Sentencing Commission to be less informed about its chosen language, and so it doubtlessly understood the phrase "change in the law" to refer to statutory changes in the law.

Excluding challenges to the legal validity of a conviction or sentence based on intervening judicial decisions, moreover, is consistent with the substantial weight of authority in the courts of appeals. Nearly every circuit to have considered the question has held that a claimed error in a defendant's judgment cannot provide extraordinary and compelling reasons for a sentence reduction, and that a defendant cannot invoke § 3582(c)(1)(A)(i) to circumvent the normal process of direct and collateral review. *See, e.g.*, *United States v. Amato*, 48 F.4th 61, 65 (2d Cir. 2022) (per curiam); *United States v. Henderson*, 858 F. App'x 466, 469 (3d Cir. 2021) (per curiam) (unpublished); *United States v. Ferguson*, 55 F.4th 262, 270-72 (4th Cir. 2022); *United States v. Escajeda*, 58 F.4th 184, 188 (5th Cir. 2023); *United States v. West*, 70 F.4th 341, 346-47 (6th Cir. 2023); *United States v. Martin*, 21 F.4th 944, 945-46 (7th Cir. 2021) (per curiam); *Crandall*, 25 F.4th at 586 (8th Cir.); *United States v. Wesley*, 60 F.4th 1277, 1283-86 (10th Cir. 2023); *Jenkins*, 50 F.4th at 1200-04 (D.C. Cir.); *see also United States v. Roper*, 72 F.4th 1097, 1102 (9th Cir. 2023) (noting issue, but explaining that the defendant there "does not claim that his original sentence violated the Constitution or federal law"). *But see United States v. Trenkler*, 47 F.4th 42, 47-49 (1st Cir. 2022).

As applied to Taylor's case, Taylor does not identify any "change in the law" besides intervening judicial decisions. But those opinions did not change the Armed

Career Criminal Act, they merely revealed what that Act always meant. Thus, Taylor was ineligible for a sentence reduction under USSG § 1B1.13(b)(6).

## III. The Sentencing Commission Exceeded Its Congressionally Delegated Authority In Promulgating Sentencing Guidelines § 1B1.13(b)(6).

### A. In Exercising Its Authority, The Commission Cannot Act Contrary to The Statute.

Even if an intervening judicial decision qualifies as a "change in the law," Taylor is ineligible for relief because the Sentencing Commission exceeded its authority in promulgating Sentencing Guidelines §1B1.13(b)(6). Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for [a] sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Such a delegation of authority, however, "is not unlimited." *Batterton v. Francis*, 432 U.S. 416, 428 (1977). Even when reached through an exercise of delegated authority, an agency's interpretation of a statute must be set aside if the agency's interpretation is not "reasonable." *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 58 (2011) (internal quotation marks omitted); *see Batterton*, 432 U.S. at 428. An agency cannot adopt an impermissible reading of the statute—*i.e.*, a reading that

exceeds the gap left by Congress. *See Mayo Found.*, 562 U.S. at 53-58; *Batterton*, 432 U.S. at 428.

The Sentencing Commission "was not granted unbounded discretion," and as the Supreme Court has explained, "[b]road as" the Commission's "discretion may be," it "must bow to the specific directives of Congress." *United States v. LaBonte*, 520 U.S. 751, 753, 757 (1997); *cf. Mistretta v. United States*, 488 U.S. 361, 379 (1989) (reasoning that the discretion vested in the Commission does not violate the nondelegation doctrine because the Sentencing Reform Act "sets forth more than merely an 'intelligible principle' or minimal standards" to guide that discretion). In the Sentencing Reform Act, itself, Congress directed the Commission to ensure that its guidelines and policy statements remain "consistent with all pertinent provisions of any Federal statute." 28 U.S.C. § 994(a). And Congress authorized the Commission only to "make *recommendations to Congress* concerning modification or enactment of statutes relating to sentencing." *Id.* § 995(a)(20) (emphasis added).

In early November, the Third Circuit became the first appellate court to consider whether the Commission, in promulgating the "nonretroactive change in law" provision, exceeded its statutory authority to define the bases of compassionate release. In *United States v. Rutherford*, the defendant, who was sentenced before the First Step Act eliminated § 924(c) "stacking,"[12] argued that he was entitled to a

---

[12] Originally, 18 U.S.C. § 924(c) required a 25-year minimum consecutive

reduction because the nonretroactive change in law rendered his sentence grossly disproportionate to what a court would likely impose post-change. 2024 WL 4645583, *6-7. The government opposed the reduction, arguing that subsection (b)(6), as applied to the First Step Act and on its face, was invalid because it exceeded the Commission's statutory authority. In *Andrews*, a pre-guidelines amendment case, the Third Circuit held that the First Step Act's nonretroactive changes to the § 924(c) mandatory minimums could not provide a basis for compassionate release. 12 F.4th at 261. Reaffirming its reasoning in *Andrews*, the Third Circuit explained that "subsection (b)(6) in the amended Policy Statement, as applied to the First Step Act's modification of § 924(c), conflicts with the will of Congress and thus cannot be considered in determining a prisoner's eligibility for compassionate release." 2024 WL 4645583, at *12. This is because subsection (b)(6) undercuts Congress's decision to make the revised § 924(c) sentencing scheme *non*retroactive. *Id*. (citations omitted).

Like *Rutherford* and *Andrews*, this case implicates Congress's decisions regarding sentencing repose. As discussed below, using nonretroactive changes in

---

sentence for each § 924(c) violation after the first, even if the convictions occurred simultaneously. The First Step Act eliminated this so-called "stacking" rule by specifying that the enhanced penalty applies only if defendants have a 924(c) conviction at the time they are sentenced for the subsequent § 924(c) offense.

law to support compassionate release creates an end-run around Congress's limit on second or successive 2255 petitions.

**B. Subsection (b)(6) Conflicts With § 3582(c)(1)(A)'s Plain Text, Context, and Purpose.**

Section 3582(c)(1)(A) provides an "except[ion]" to the overarching principle of federal sentencing law that a "federal court generally 'may not modify a term of imprisonment once it has been imposed.'" *Dillon*, 560 U.S. at 819 (quoting 18 U.S.C. § 3582(c)). Congress directed that only "extraordinary and compelling" reasons could overcome that principle. 18 U.S.C. § 3582(c)(1)(A)(i). No reasonable interpretation of "extraordinary and compelling," especially given the statute's structure and purpose, can encompass nonretroactive or intervening changes in law. The Commission's interpretation of the statute as set forth in subsection (b)(6) is unreasonable and therefore invalid.[13] *Mayo Found.*, 562 U.S. at 58; *see LaBonte*, 520 U.S. at 753 (invalidating Guidelines amendment where "the Commission's interpretation is inconsistent with [the statute's] plain language").

[13] The Supreme Court has not addressed what deference is owed to the Commission's interpretations of a statute. *DePierre v. United States*, 564 U.S. 70, 87 (2011). This court need not resolve the question because the statute unambiguously excludes the Commission's chosen interpretation. *See, e.g.*, *LaBonte*, 520 U.S. at 762 n.6 ("Inasmuch as we find the statute at issue here unambiguous, we need not decide whether the [Sentencing] Commission is owed deference under *Chevron*."); *Neal*, 516 U.S. at 295 (declining to "decide what, if any, deference is owed" to the Sentencing Commission's "alleged" interpretation of 21 U.S.C. § 841(b)(1)).

***a. Intervening changes the law are neither "extraordinary" nor "compelling" reasons for a sentence reduction.***

To justify a sentence reduction under § 3582(c)(1)(A)(i), a proffered reason must be both "extraordinary" and "compelling." As a matter of plain language, an intervening change in the law is neither. The majority of the circuits to have considered the issue have reached that determination, *see supra* at n. 2, and this court should conclude the same.

Taylor contended below that this Court's decisions in *Said* and *Latson* mean he would no longer qualify as an Armed Career Criminal if he were sentenced today. But those intervening decisions do not establish a change in the law; rather, Taylor claims that it establishes an error that occurred at his sentence, which he claims is now apparent considering the intervening decision. As discussed, that contention does not qualify as a "change in law" under subsection (b)(6).

But even if it did, the Commission exceeded its statutory authority in identifying such nonretroactive changes as "extraordinary and compelling." Consistent with the "'fundamental canon of statutory construction' that words generally should be 'interpreted as taking their ordinary, contemporary, common meaning . . . at the time Congress enacted the statute,'" *Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2074 (2018), the word "extraordinary" should be understood "to mean 'most unusual,' 'far from common,' and 'having little or no precedent,'" *United States v. McCall*, 56 F.4th 1048, 1055 (6th Cir. 2022) (en banc)

(quoting Webster's Third New International Dictionary of the English Language 807 (1971) (Webster's)). There is "nothing 'extraordinary' about new . . . caselaw, or a contention that the sentencing judge erred" due to new caselaw, because such developments "are the ordinary business of the legal system." *United States v. King*, 40 F.4th 594, 595 (7th Cir. 2022); *see Gonzalez v. Crosby*, 545 U.S. 524, 536 (2005) ("[It is hardly extraordinary that subsequently, after petitioner's case was no longer pending, th[e Supreme] Court arrived at a different interpretation" of a federal statute).

An intervening development in sentencing law likewise cannot constitute a "compelling" reason for a sentence reduction. When Congress enacted the Sentencing Reform Act of 1984, "[c]ompelling" meant (and still means) "forcing, impelling, driving." *McCall*, 56 F.4th at 1055 (quoting Webster's 463). Thus, for a reason to be "compelling" under § 3582(c)(1)(A)(i), it must provide a "powerful and convincing" reason to disturb the finality of a federal sentence. *Jenkins*, 50 F.4th at 1197 (internal quotation marks omitted). "But given the availability of direct appeal and collateral review under section 2255 of title 28," there is no powerful and convincing reason to allow prisoners to pursue claims of error under § 3582(c)(1)(A)(i). *Id*. at 1200. Taylor could have raised the ACCA predicates issue as a collateral attack on his sentence, but he did not. This is unsurprising, given that his filing would constitute a successive 2255 motion, meaning he would

have had to establish that his claim was based on a new rule of constitutional law. Taylor instead used compassionate release as an end-run around congressional limits on successive 2255 motions, further underscoring how the Commission overreached in its amended guidance. *See Rutherford*, 2024 WL 4645583 *12 (rejecting First Step Act's nonretroactive changes to § 924(c) sentencing scheme as a basis for compassionate release because "Congress specifically decided that the changes … would not apply to people who had already been sentenced").

Accordingly, an intervening development in sentencing law cannot serve as an "extraordinary" or a "compelling" reason for a sentence reduction in isolation or as adding to a package of such "reasons." 18 U.S.C. § 3582(c)(1)(A)(i). Whether considered alone or in combination with other asserted factors, an intervening development in sentencing law is a "legally impermissible" consideration for purposes of determining whether an extraordinary and compelling reason exists. *Jenkins*, 50 F.4th at 1202 (internal quotation marks omitted); *see United States v. Jarvis*, 999 F.3d 442, 444 (6th Cir. 2021) (explaining that a prospective change to sentencing law is a "legally impermissible ground" for finding an "extraordinary and compelling reason," even when it is "combined with" other considerations).

***b. Section 3582(c)(1)(A)(i)'s context further confirms that the term "extraordinary and compelling" cannot encompass intervening changes in law.***

In the Sentencing Reform Act, Congress directed the Commission to "describe what should be considered extraordinary and compelling reasons for [a] sentence reduction," but cautioned that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). Relying on that language, defenders of the Sentencing Commission's definition of "extraordinary and compelling" claim that Congress placed only one textual limit on the reasons that might warrant a sentence reduction.

That contention disregards the statute's text and misunderstands the purpose of Section 994(t)'s limitation. As a textual matter, § 3582(c)(1)(A) itself expressly limits any reasons invoked to justify a sentence reduction to those that are both "extraordinary and compelling." Had Congress instead intended to impose no limitation beyond rehabilitation, it could have drafted the statute to permit a sentence reduction whenever the district court simply finds that any "reasons" or any "reasons identified by the Sentencing Commission" warrant a reduction. Congress did not write such a broad statute. *See McCall*, 56 F.4th at 1063.

"Statutory construction," moreover, "is a holistic endeavor" and a provision "is often clarified by the remainder of the statutory scheme." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988). Other features

of the scheme confirm that the phrase "extraordinary and compelling reasons" does not encompass changes in law.

Most notably, in the very next paragraph of § 3582(c), Congress expressly addressed the retroactive application of some changes in law. In § 3582(c)(2), Congress authorized courts to modify a term of imprisonment where a defendant was sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); *see* 28 U.S.C. § 994(u) (directing the Commission to determine when such modifications are appropriate). There would have been no reason for "the same Congress, skeptical of sentence modifications as a general rule," to have "provide[d] for the retroactive application of specific changes in sentencing law in § 3582(c)(2)" had § 3582(c)(1)(A)(i) "already covered all legal developments, retroactive or not." *McCall*, 56 F.4th at 1056. That Congress did not similarly provide the Commission or district courts with authority to revisit sentences due to statutory amendments or changes in decisional law suggests that Congress did not intend for § 3582(c)(1)(A) to reach such changes.

Reducing sentences based on intervening changes in the law also would undermine congressional design more generally because a motion brought pursuant to 28 U.S.C. § 2255 is the "remedial vehicle" Congress "specifically designed for federal prisoners' collateral attacks on their sentences." *Jones v. Hendrix*, 599 U.S.

465, 473 (2023); *see Thacker*, 4 F.4th at 574. (explaining that Section 2255 provides the "principal path" that Congress has "established for federal prisoners to challenge their sentences" after they have become final). Treating a nonretroactive change in the law as an "extraordinary and compelling" reason for a sentence reduction would allow defendants to "avoid the restrictions of the post-conviction relief statute by resorting to a request for compassionate release instead." *Crandall*, 25 F.4th at 586. It "would wholly frustrate explicit congressional intent to hold that [defendants] could evade" those restrictions "by the simple expedient of putting a different label on their pleadings." *Preiser v. Rodriguez*, 411 U.S. 475, 489-90 (1973). Congress surely "knew of its specific statutory scheme authorizing post-conviction relief" both "when it [enacted § 3582(c)(1)(A)] in 1984 and amended it in 2018," and had "Congress intended the compassionate-release statute to act as an exception to this post-conviction framework, it would have made that intent specific." *McCall*, 56 F.4th at 1057-58 (internal quotation marks omitted).

***c. Recognizing intervening changes in law as extraordinary or compelling reasons for a sentence reduction under § 3582(c)(1)(A)(i) undermines a chief purpose of the Sentencing Reform Act, in which that provision was enacted.***

Through the Act, Congress sought to eliminate the "'unjustifi[ed]' and 'shameful' consequences" of a sentencing regime that produced "great variation among sentences imposed by different judges upon similarly situated offenders" and "uncertainty as to the time [an] offender would spend in prison." *Mistretta*, 488

U.S. at 366 (quoting S. Rep. No. 98-225, at 38, 65 (1983) (Senate Report)); *see also Neal*, 516 U.S. at 290-91 ("The Commission was born of congressional disenchantment with the vagaries of federal sentencing and of the parole system"). The practices of federal courts and the Parole Commission left "each judge . . . to apply his own notions of the purposes of sentencing," resulting in an "astounding" and "inevitable disparity" in sentencing that was "not justified by differences among offenses or offenders" and was "unfair both to offenders and to the public." Senate Report at 38, 41, 45. "A primary goal" of the Act was "the elimination of unwarranted sentencing disparity." Senate Report at 52. In "overhaul[ing] federal sentencing practices" by "abandon[ing] indeterminate sentencing and parole," Congress sought to "channel[ ] judges' discretion by establishing a framework to govern their consideration and imposition of sentence." *Tapia*, 564 U.S. at 325.

Consistent with Congress's goal of determinate sentencing, § 3582(c)(1)(A) was enacted as a narrow "safety valve" for "unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances." Senate Report at 55, 121. Congress anticipated that such "justification[s] for reducing a term of imprisonment" would arise in a "relatively small number" of cases, and specifically identified severe or terminal illness as the archetype of "extraordinary and compelling circumstances" that would justify reducing a sentence. *Id.* at 55-56, 121.

Subsection (b)(6), however, purports to allow a district court to reduce a defendant's sentence when, in the judge's estimation, the defendant received "an unusually long sentence" that, accounting for nonretroactive changes in law, now represents a "gross disparity" from the sentence the court would likely impose today. USSG § 1B1.13(b)(6). That authority is incompatible with the Sentencing Reform Act's overarching purpose and Congress's specific intent with respect to § 3582(c)(1)(A), and it effectively reproduces the indeterminate system the Act sought to eliminate, in which judges applied their own varied "notions of the purposes of sentencing." Senate Report at 38. Individual judges inevitably will have divergent views concerning the fairness of adhering to the ordinary practice of applying a change in law prospectively, whether a sentence lawfully imposed under the prior regime is "unusually long," and whether Congress's or the courts' assessment not to apply a change in law retroactively produces a "gross disparity," and what a "gross disparity" looks like. It is doubtful the Sentencing Reform Act "contained the[ ] seeds of its own destruction," *Jenkins*, 50 F.4th at 1202, and there is no basis to think that, notwithstanding the Act's express purpose to eliminate parole in favor of determinative sentencing, Congress nevertheless created such "a freewheeling opportunity for resentencing based on prospective changes in sentencing policy or philosophy," *Crandall*, 25 F.4th at 586.

The Sentencing Commission's explanation for the amendment cites a single sentence from the Senate Report to support its conclusion that § 3582(c)(1)(A)(i) allows courts to reduce "unusually long sentences." *See* 88 Fed. Reg. at 28,258. In the relevant passage, the Senate Judiciary Committee expressed its belief that the "unusual cases in which an eventual reduction in the length of a term of imprisonment" would be "justified by changed circumstances" might include "cases of severe illness" or "cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence." Senate Report at 55. The Commission takes that line—which is ambiguous at best—out of context and elevates that single sentence above the Act's plain text and overarching purpose. In context, the passage suggests only that Congress anticipated that the sort of "changed circumstances" that might warrant a sentence reduction would most often emerge during the duration of an "unusually long" period of incarceration—during which a prisoner might become elderly or infirm, for example. *Id.* Indeed, the passage makes clear that to justify even the reduction of an unusually long sentence Congress understood § 3582(c)(1)(A) to require the identification of particular "extraordinary and compelling circumstances." *Id.* The passage does not suggest that § 3582(c)(1)(A) provides authority to reduce any sentence a court subsequently comes to view, in hindsight, as "unusually long."

The Commission also invokes the First Step Act of 2018's stated intent to increase the use of sentence reduction motions. *See* 88 Fed. Reg. at 28,256; § 603(b), 132 Stat. 5239. But nothing about the First Step Act's procedural amendment to § 3582(c)(1)(A) or Congress's expectation that the amendment would lead to greater use of the provision "suggests Congress intended to change th[e] *substantive* status quo with a process-oriented amendment." *McCall*, 56 F.4th at 1060 (emphasis added). Congress's effort to allow defendants to file sentence-reduction motions directly sought to remedy perceived deficiencies in the BOP's preexisting procedures, which prevented the BOP from bringing § 3582(c)(1)(A) motions on behalf of some defendants who satisfied longstanding criteria for relief.[14] Congress, however, did not amend the statutory requirement that reasons for a sentence reduction be extraordinary and compelling. Tellingly, the amendment explicitly conditioned a defendant's filing on a requirement that he first "exhaust[ ]" with BOP a request that BOP "bring a motion on the defendant's behalf." 18 U.S.C. § 3582(c)(1)(A). Congress could not have expected BOP to evaluate whether an

---

[14] *See* Sentencing Guidelines App. C, Amend. 799 (noting evidence showing "inefficiencies that exist within the Bureau of Prisons' administrative review of compassionate release applications, which can delay or deny release, even in cases where the applicant appears to meet the criteria for eligibility"); U.S. Dep't of Justice, Office of the Inspector Gen., *The Federal Bureau of Prisons' Compassionate Release Program* 53 (2013) (finding that the "inconsistent and ad hoc implementation" of BOP's "compassionate release program" has "likely resulted in potentially eligible inmates not being considered for release").

intervening change in law warranted a defendant's early release from custody; indeed, BOP typically plays no role in "determining the lawfulness of individual sentences," "calculating guideline ranges," or assessing the possible disparity produced by a defendant's sentence. *See Jenkins*, 50 F.4th at 1205-06. In short, nothing about the First Step Act's procedural amendment "indicates any intention on Congress's part" to "fundamentally change the nature of compassionate release." 4/5/23 Tr. 64-66 (Vice Chair Murray, delivering joint statement); *cf. Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress . . . does not, one might say, hide elephants in mouseholes.").

***d. The Commission's interpretation of § 3582(c)(1)(A) is in serious tension with separation-of-powers principles.***

In upholding the Sentencing Commission's constitutionality, the Supreme Court observed that the Commission is not vested with "the legislative responsibility for establishing minimum and maximum penalties for every crime." *Mistretta*, 488 U.S. at 396. "Congress generally cannot delegate its legislative power to another Branch," *id*. at 372, and "[w]hatever views may be entertained regarding severity of punishment, . . . these are peculiarly questions of legislative policy," *Gore v. United States*, 357 U.S. 386, 393 (1958). The Commission does not pose a nondelegation or separation-of-powers concern, the Court held, precisely because Congress delegated to the Commission "nonadjudicatory functions that do not trench upon the prerogatives of another Branch." *Mistretta*, 488 U.S. at 388. Subsection (b)(6)

contravenes those limits by purporting to empower courts to ignore Congress's retroactivity determinations on a case-by-case basis.

The separation-of-powers concern is particularly apparent when one considers the Commission's directive regarding its own retroactivity determinations. Section 3582(c)(2) permits a defendant "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission" to move for a sentence reduction "consistent with applicable policy statements issued by the Sentencing Commission," and Sentencing Guidelines § 1B1.10 identifies particular Guidelines amendments that the Commission has elected to make retroactive. *See* USSG § 1B1.10(a), (d). In subsection (b)(6), the Commission expressly excluded "an amendment to the Guidelines Manual that has not been made retroactive" from qualifying as an extraordinary and compelling reason for a sentence reduction. USSG § 1B1.13(b)(6); *see* 88 Fed. Reg. at 28,259. The Commission accordingly precluded courts from using compassionate release as an end-run around the Commission's own determinations concerning the retroactive application of its Guidelines amendments. But by permitting other changes in law, including a statutory change that Congress explicitly declined to make retroactive, to qualify, the Commission declined to afford the same respect to Congress's retroactivity determinations. That counterintuitive result cannot be squared with

the Commission's statutory authority. *See, e.g.*, *LaBonte*, 520 U.S. at 757 (the Commission "must bow to the specific directives of Congress").

**Conclusion**

For the foregoing reasons, this Court should reverse the district court's order reducing Taylor's sentence.

Respectfully submitted,

Markenzy Lapointe
United States Attorney

By: *s/ Yeney Hernandez*
Yeney Hernandez
Assistant United States Attorney
99 N.E. 4th Street, #500
Miami, FL 33132
(305) 961-9277
Yeney.Hernandez@usdoj.gov

Daniel Matzkin
Chief, Appellate Division

Of Counsel

## Certificate of Compliance

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 11,916 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements for Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally-based typeface using Microsoft Word 2016, 14-point Times New Roman.

## Certificate of Service

I hereby certify that seven copies of the foregoing Brief for the United States were mailed to the Court of Appeals via Federal Express this 19th day of November, 2024, and that, on the same day, the foregoing brief was filed using CM/ECF and served via CM/ECF on: Hector A. Dopico, Interim Federal Public Defender, Federal Public Defender's Office and Marisa R. Taney, Assistant Federal Public Defender, counsel for Rodney Taylor.

s/ *Yeney Hernandez*
Yeney Hernandez
Assistant United States Attorney

***jp***